UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DENNIS ANDERSON                          CIVIL ACTION

v.                                       NO. 07-5518

CYTEC INDUSTRIES, INC.                   SECTION "F"


ORDER AND REASONS

Before the Court are cross-motions for summary judgment on the administrative record. For the reasons that follow, the plaintiff's motion is DENIED and the defendant's motion is GRANTED. These motions ask an unresolved question in this Circuit: What defines the administrative record in an ERISA disability dispute?

**Background**

Dennis Anderson started with Cytec Industries, Inc. in 1976; he worked as an acid panel operator[1] at its Waggaman, Louisiana chemical plant until Hurricane Katrina hit New Orleans in late August 2005. Mr. Anderson evacuated to Atlanta, Georgia and, shortly thereafter, submitted a claim for short-term disability benefits under Cytec's short-term disability benefit plan,[2] which

_____

[1] As an acid panel operator, Mr. Anderson was responsible for operating the computers and industrial production machinery that manufactures sulfuric acid.

[2] As a full-time employee, Mr. Anderson was covered by the Cytec Industries self-funded employee welfare benefit plan, which provided coverage for short-term and long-term disability. Cytec serves as the plan administrator and Broadspire (later replaced by Aetna) served as the third-party claims administrator. Section 6.4(e) of the short-term benefit plan confers upon Cytec discretionary authority to determine eligibility for benefits and to construe the short-term disability plan's terms.

is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. His claim was initially granted on a conditional basis. But later, Mr. Anderson's short-term disability claim was denied because the third-party administrator of the plan determined, based on the medical evidence presented by Anderson, that Anderson was not "totally disabled" as required under the plan.

## Cytec's Short-Term Disability Plan

Under the plan, an employee initially files a claim for benefits with the plan's third-party administrator. The third-party administrator decides whether the claim is approved. If the claim is denied, the employee has 60 days to appeal and submit written issues and comments.

To receive short-term disability benefits, an employee must have a "total disability" or be "totally disabled." The plan is clear and exact. Under the plan, those terms mean

> the complete inability of the [employee], due to sickness, injury or pregnancy, for which the [employee] is and remains under the care of a licensed physician, to perform any and every duty pertaining to his occupation with [Cytec] and/or any similar occupations which [Cytec] may provide.

## Mr. Anderson's Post Traumatic Stress Disorder

Mr. Anderson is a war veteran; he served in combat during the Vietnam War, as well as active duty during the first Gulf War. For many years, he has suffered from post traumatic stress disorder

(PTSD) as a result of his experiences in Vietnam.  Before Hurricane

Katrina, he was able to control his disorder through regular

medical treatment and medication; it did not interfere with his

work.

### Hurricane Katrina and Mr. Anderson's Evacuation

In August 2005, Mr. Anderson and his family were residents of

New Orleans -- they lost their home and virtually all of their

possessions as a result of the savage storm and its aftermath of

flooding.  Mr. Anderson and his family evacuated to Atlanta,

Georgia.

Cytec's Waggaman facility, which is on the west bank of the

Mississippi River, did not flood (though it did sustain some wind

damage).  So, gradually, within days or weeks of the storm, its

various units reopened.

But Mr. Anderson did not return to New Orleans or to work at

Cytec; rather, he and his family stayed in Atlanta.  During his

first few weeks in Atlanta, Mr. Anderson did not seek any medical

treatment. Then, on September 27, 2005, he reported to the Atlanta

Veteran's Administration Hospital for treatment for his PTSD.

### Anderson's Application for Short-Term Disability Benefits

In late September 2005, Mr. Anderson began receiving

"intensive treatment" as a patient at the Atlanta Veteran's

Administration Hospital's specialized PTSD clinic; he asserts that

he experienced a severe worsening of his PTSD at this time.  Since

September 2005, he has continued to receive regular psychiatric treatment at the Atlanta VA Hospital.[3]

In October, 2005 Mr. Anderson submitted a claim for short-term disability benefits. On October 19, 2005 his treating psychiatrist, Dr. Aida Saldivia, submitted a statement to Cytec (through Broadspire, the plan's third-party claim administrator) certifying that Mr. Anderson was receiving regular and ongoing medical treatment for his PTSD and was unable to return to work for an "undetermined" time. Dr. Saldivia identified multiple physical and cognitive impairments and "severe symptoms" secondary to his worsened PTSD that collectively rendered Mr. Anderson "incapable of performing [his] job duties" including: chest pain, shortness of breath, speech deficits, depression, sleep disorder, headaches, hallucinations, anxiety, decreased focus, and an inability to maintain concentration. Cytec agreed that Mr. Anderson had duly "supported his [short term disability] claim", partially granted

---

[3] His treating physicians report that his worsened PTSD rendered him "totally disabled" and "completely unable to perform work." Cytec asserts that, in September 2005 and in subsequent months, Mr. Anderson reported to medical care providers, however, that he was not returning to work with Cytec because he could not leave his wife, who was with him in Atlanta, or find a place in the New Orleans area for her to live. (Mrs. Anderson is also a military veteran, who is wheelchair-bound.) He reported on several occasions that he could not find handicap housing to accommodate his wife and, therefore, was not returning to work at Cytec.

his claim on a conditional basis, and began paying benefits.[4]

Because Cytec only conditionally granted short-term benefits, in early November 2005 Mr. Anderson's medical records were sent for "Peer Review" so that his short-term disability benefits application could be examined more thoroughly. The question presented for Peer Review was: "Based on the documentation, job description and peer to peer (where applicable), does the information support a functional impairment from 9/27/2005 through 11/14/2005?" Peer Review was completed on November 18, 2005, and the short answer was: "[T]he information does not support a functional impairment from 9/27/05 to 11/14/05." In support of that conclusion, Dr. Mendellssohn,[5] who conducted the Peer Review, recounted the medical evidence, and concluded that

> There appears to be an impression on the part
> of the clinicians that the claimant would be
> unable to cope with the stress of his job.
> However, the notes, especially those relevant
> to the period in question, do not contain
> specific examples of the claimant's behavior
> or measurements of the claimant's cognitive

---

[4] While short-term disability benefits were granted to him, the starting date of the benefits was September 27, 2005 (not late August 2005, as he requested), because he had not sought treatment prior to then.

[5] Dr. Mendelssohn and Dr. Burstein conducted the peer reviews for Cytec. Dr. Mendelssohn is a Clinical and Neuropsychologist with a professional doctorate in Clinical Psychology (Psy. D.), and Dr. Burstein holds a Doctorate of Philosophy in Clinical Psychology (Ph.D.). Cytec asserts that both are experts in psychiatric conditions, and that Psy.Ds. focus more on clinical work, while PhDs. focus more on the academic research in the field. Neither is a medical doctor.

functioning to support these impresseions....
[W]hile the claimant's providers appear to be
of the opinion that he would be unable to
perform his occupation, they did not support
this opinion through examination findings.
Therefore, the information does not support a
functional impairment, from a psychological
perspective, that would have precluded the
claimant from performing the core elements of
his occupation from 11/21/2005 through the
present.

On December 9, 2005 Cytec terminated payment of benefits, and

demanded that Mr. Anderson return to work. Broadspire, by letter,

informed Mr. Anderson of the reasons his claim was denied:

The medical records from Dr. Saldivia, Ms.
Taylor and Mr. Barrett were reviewed and at
this time there are no objective clinical
findings documented that would describe a
psychological condition impacting your
functioning to a degree that would preclude
you from performing your job duties. Even
though your treating providers document that
you were having increased symptoms of post-
traumatic stress disorder including difficulty
with sleep and flashbacks, there was no
examination findings or behavioral
observations to substantiate the presence of
a[n] impairment in psychological functioning.

Under the plan, Mr. Anderson had 60 days from his receipt of

the denial letter from Broadspire to appeal the denial and submit

written materials and comments for consideration.

### Mr. Anderson's Appeals

On January 24, 2006 Mr. Anderson submitted an appeal dated

January 11; he did not attach any medical information to his appeal

letter. After some back-and-forth between Broadspire and Mr.

Anderson, Broadspire received (on February 24, 2006, after the 60-

6

day appeal period had expired) 39 pages of "progress notes" from one of Mr. Anderson's treating physicians.

Still a second Peer Review was conducted, and completed on March 7, 2006. In noting that "no examination findings or behavioral observations...substantiate the presence of impairment in psychological functioning" and further that "[n]o at-risk behaviors were reported," Dr. Burstein concluded that

> The submitted documentation primarily includes self-reported complaints and clinical impressions. Examination findings fail to describe a psychological condition impacting the claimant's functioning to a degree to preclude him from performing his own occupation. As such, the information does not support a functional impairment from 9/27/05 to 11/14/05.

On March 14, 2006 Broadspire informed Mr. Anderson that his appeal was denied, reasoning:

> The clinical documentation noted your subjective complaints and your physicians opinions that you are unable to cope with the stress of your job.
>
> The notes did not contain specific examples of your behavior or measurements of your cognitive functioning nor restrictions or limitations that would prevent you from performing any and every duty pertaining to your occupation. In conclusion, the appeal review with [Broadspire], in conjunction with an independent peer physician review specializing in psychology concluded the medical records failed to support a cognitive or functional impairment from 11/28/05 forward.

Mr. Anderson appealed again, but on July 10, 2006, his appeal was

denied by the Plan Administrator, Carol Van Rensalier, who is Cytec's Employee Benefits Supervisor. Ms. Van Rensalier's denial letter to Mr. Anderson once again restated the plan's definition of "total disability", and stated:

> We have reviewed all available information submitted with your letter of appeal [received June 8, 2006] including individual and group treatment notes from Dr. Saldivia, Ms. Taylor and Mr. Barrett, in addition to peer to peer review notes from Aetna noting a conversation between Dr. Mendollssohn, Psy. D. Clinical & Neuropsychologist, contracted by Aetna and Dr. Saldivia.

> Based on our review of the information described, we are upholding Aetna's previous decision to deny benefits for short term disability benefits beyond November 28, 2005. The information presented in the treatment notes did not contain specific examples of any behavior or measurements of cognitive functioning to support neither impairment nor any documentation in support of a functional impairment, from a psychological perspective, that would support a period of total disability beyond the period benefits have already been through.

> If you have any questions regarding this appeal decision please contact me....[6]

On January 17, 2007 Mr. Anderson, through counsel, notified Broadspire of Mr. Anderson's wish to supplement the administrative record with additional medical evidence of his past and ongoing

---

[6] Cytec's denial letter did not provide any instructions regarding Mr. Anderson's further appeal rights, did not identify any time limitations for him to appeal or otherwise respond to the denial, did not limit his ability to submit further evidence in support of his claim, and did not identify its decision as final.

disability.  On January 30, 2007 Mr. Anderson's counsel forwarded
letter reports from Mr. Anderson's treating psychiatrists.  Dr.
James Stephens explained that Anderson's PTSD rendered him totally
disabled and identified specific functional impairments supporting
his opinion:

> I am a licensed psychiatrist in the
> Trauma recovery Program at the Atlanta VA
> Medical Center.  Mr. Dennis Anderson is
> currently under my care for the treatment of
> Posttraumatic Stress Disorder (PTSD).  His
> symptoms of intrusive thoughts, decreased
> concentration, hypervigilance, emotional
> dysregulation, homicidal ideation, and
> insomnia prevent him from performing salient
> duties of his job as panel board operator or
> any similar occupation.  His symptoms are
> severe enough to warrant complete disability
> and intensive treatment in our specialized
> PTSD clinic.
>
> Mr. Anderson has been under the regular
> care of licensed physicians at the Veterans
> Administration hospital since September 2005.
> His condition necessitates that he continue
> receiving medical care into the future
> indefinitely.

Mr. Anderson's other treating psychiatrist, Dr. Neera Gupta,
agreed:

> Mr. Dennis Anderson is a patient of mine
> at the VAMC in Atlanta since July 2006.  Mr.
> Anderson has been under regular psychiatric
> care since September 2005 and will remain
> under active psychiatric care indefinitely.
>
> Mr. Anderson is completely unable to
> perform work because of his disability and
> will be unable to work indefinitely.  He has
> severe post traumatic stress disorder and
> depression/anxiety that requires regular
> therapy and medication management

indefinitely.

On January 22, 2007 Aetna (formerly, Broadspire) received Mr. Anderson's counsel's letter of representation and on February 6, 2007 Cytec/Aetna received counsel's correspondence forwarding the expert medical reports. On March 14, 2007 Mr. Anderson's counsel faxed to Aetna requested evidence of representation. On March 16, 2007 Aetna forwarded a copy of the administrative record to Mr. Anderson's counsel. Aetna did not address, reject, or otherwise consider the medical evidence submitted in January 2007.

On May 1, 2007 Mr. Anderson's counsel wrote to Aetna requesting the status of Mr. Anderson's appeal and asked for copies of the Cytec plan documents. Three weeks later, by letter dated May 21, 2007, Aetna acknowledged Mr. Anderson's request for the plan documents and advised that the request for consideration for an administrative appeal would "be addressed under separate cover." On May 29, 2007 Mr. Anderson again submitted more medical records from the Atlanta VA Hospital in further support of his disability. By letter dated June 22, 2007 Cytec finally forwarded copies of the Cytec Short Term Disability Plan and Summary Plan Description. Neither Cytec nor Aetna addressed, rejected, or otherwise considered Mr. Anderson's additional medical evidence submitted.

Mr. Anderson sued Cytec on September 11, 2007, asserting two claims under ERISA: (1) that he was wrongfully denied disability benefits, in violation of 29 U.S.C. § 1132(a)(1)(B); and (2) that

Cytec breached a fiduciary duty owed to him by arbitrarily and capriciously terminating his short-term disability benefits and refusing to award him long-term disability benefits, in violation of 29 U.S.C. § 1104.

Because this is an ERISA claim, the parties submitted a stipulated scheduling order and now submit cross-motions for judgment on the administrative record to resolve the plaintiff's claims.

The defendant contends that the administrative record conclusively establishes that Cytec did not abuse its discretion in denying Mr. Anderson's claim for disability benefits. What comprises the administrative record is disputed and sharply focuses the pending motions.

## I.   Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

A. Abuse of Discretion Standard of Review

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (citing 29 U.S.C. § 1001 et seq.; § 1132(a)(1)(B)).

12

When reviewing a denial of benefits made by an ERISA plan administrator, the Court applies a *de novo* standard of review, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115, 109 S.Ct. 948, 104 L.Ed.2d 80 (1989). Here, the short-term benefit plan, at Section 6.4(e), clearly empowers Cytec with discretionary authority to determine eligibility for benefits and to construe the short-term disability plan's terms. Accordingly, this Court must apply an abuse of discretion standard to review Cytec's decision to deny Mr. Anderson's claim for short-term disability benefits.[7] <u>Id.</u>

Moreover, the Court must measure the conflict of interest that arises from the dual role of an entity acting as an ERISA plan administrator and also as a payer of plan benefits, as a factor in determining whether the plan administrator has abused its discretion in denying benefits. <u>Glenn</u>, 128 S.Ct. at 2347. However, if a claimant presents no other evidence (other than the company's dual role) as to the degree that a conflict exists and

---

[7] Different terms have been used to describe what amounts the same standard. Some courts refer to the standard as "arbitrary and capricious," or an inquiry into whether the administrator's decision was "reasonable and impartial." The Court does not find a material difference in how the caselaw has used these terms. <u>See</u> <u>MediTrust Fin. Servs. v. The Sterling Chems.</u>, 168 F.3d 211, 214-15 (5th Cir. 1999) ("In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously").

affects the decision to deny benefits,[8] the Court reviews the administrator's decision "with only a modicum less deference than [it] otherwise would." Corry v. Liberty Life Assur. Co., 499 F.3d 389, 398 (5th Cir. 2007) (quoting Vega v. Nat'l Life Ins. Serv., Inc., 188 F.3d 287, 301 (5th Cir. 1999) (en banc)). Because Anderson has presented no evidence to establish any conflict beyond Cytec's mere technically dual role, the Court reviews Cytec's decision with substantial deference.

In analyzing whether the plan administrator abused its discretion, "the law requires only that substantial evidence support a plan fiduciary's decision, not that substantial evidence exists to support the employee's claim of disability." See Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 274 (5th Cir. 2005). "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious," the Fifth Circuit instructs, "it must prevail." Corry, 499 F.3d at 398-99 (citation omitted). The Fifth Circuit counsels reasonableness:

> Substantial evidence is more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... An arbitrary decision is one made without a rational connection between the known facts and the decision or between the facts and the evidence.... Ultimately, "[the Court's review] of the administrator's

---

[8] The plaintiff bears the burden to submit evidence that the company's decision was actually tainted by self-interest. Id. at 2351.

decision need not be particularly complex or
technical; it need only assure that the
administrator's decision fall somewhere on a
continuum of reasonableness-even if on the low
end."

Id. (citations omitted).  Central to the force of these principles
is the administrative record.

B.

The Administrative Record

The Court's review of factual determinations under the abuse
of discretion standard is limited to the evidence contained in
whatever is the administrative record; the Court may not open the
record and conduct discovery as to these determinations, or indulge
in fact-finding.  See Gooden v. Provident Life & Accident Ins. Co.,
250 F.3d 329, 333 (5th Cir. 2001) (noting, as an exception to this
general rule, that a district court may consider evidence outside
the administrative record if it will assist the court in
understanding the medical terminology or practice related to the
claim); see also Vega v. Nat'l Life Ins. Servs, Inc., 188 F.3d 287,
299 (5th Cir. 1999) (en banc).  It is here that the Fifth Circuit's
en banc decision in Vega becomes the central actor.

"A long line of Fifth Circuit cases," the court wrote in Vega,
"stands for the proposition that, when assessing factual questions,
the district court is constrained to the evidence before the plan
administrator."  Vega, 188 F.3d at 300 (citing cases).  Vega,
however, contains some rather murky dictum, which the court of

appeals some years later has chosen not to address with certainty. See <u>Keele v. JP Morgan Chase Long Term Disability Plan</u>, 221 Fed.Appx. 316, 321 (5th Cir. 2007)(unpublished). In <u>Vega</u>, the *en banc* court appears to recognize that, in undefined circumstances, a claimant may supplement the administrative record even *after* a plan administrator has denied a claim.[9] <u>Vega</u> presents an enigma:

---

[9] The Fifth Circuit observed:

> Before filing suit, the claimant's lawyer can add additional evidence to the administrative record by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. In <u>Moore</u>, we said that "we may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination." [<u>Southern Farm Bureau Life Ins. Co. v. Moore</u>, 993 F.2d 98, 102 (5th Cir. 1993)] If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record. [citation omitted] Thus, **we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.** <u>Vega</u>, 188 F.3d at 300 (emphasis added).

This Court points out that, if <u>Vega</u> is read to allow claimants to supplement the administrative record after the administrator's claim denial, it appears to be the only circuit to allow it. <u>See</u>, <u>e.g.</u>, <u>Moon v. Unum Provident Corp.</u>, 405 F.3d 373, 378 (6th Cir. 2005); <u>Marks v. Newcourt Credit Group, Inc.</u>, 342 F.3d 444, 458 (6th Cir. 2003); <u>Kimber v. Thiokol Corp.</u>, 196 F.3d 1092, 1098 (10th Cir. 1999); <u>Chambers v. Family Health Plan Corp.</u>, 100 F.3d 818, 824 (10th Cir. 1996); <u>Abnathya v. Hoffmann-LaRoche, Inc.</u>, 2 F.3d 40, 48 n.8 (3rd Cir. 1993); <u>Alford v. DCH Foundation Group Long-Term Life Ins. Co. of America</u>, 144 F. Supp. 2d 1183 (C.D.Cal. 2001), <u>aff'd</u>, 311 F.3d 955 (9th Cir. 2002). <u>See also</u> <u>Needham v. Tenet Select Benefit Plan</u>, No. Civ.A. 02-3291, 2004 WL 193131, at *7 (E.D. La. Jan. 30, 2004) (citing cases from the Third, Sixth, Ninth, and Tenth Circuits, which limit the scope of a district court's review of plan administrator's decisions to evidence available to an

"the administrative record consists of relevant information made

available to the administrator prior to the complainant's filing of

a lawsuit and in a manner that gives the administrator a fair

opportunity to consider it." <u>Vega</u>, 188 F.3d at 300.

While recognizing the challenge of <u>Vega</u>'s dictum, the Fifth

Circuit has chosen not to give content to what constitutes a fair

opportunity to consider additional evidence. (Others have observed

that because <u>Vega</u> is an *en banc* decision it has not been overruled

by subsequent decisions.[10]) And so, <u>Vega</u> remains somewhat of a

---

administrator before its final decision). Moreover, <u>Vega</u>'s
uncertain dictum could be read as requiring plan administrators to
keep administrative records open indefinitely, which would seem to
offend fundamental policy. Thus, efforts to read what precise time
limits, if any, <u>Vega</u> instructs don't accomplish much in the way of
guidance. <u>See</u> <u>Needham</u>, 2004 WL 193131, at *7; <u>see</u> <u>also</u> <u>Carrington</u>
<u>v. Hartford Life & Accident Ins. Co.</u>, Civ. A. No. 05-3261, 2007 WL
2177688, at * (E.D. La. July 27, 2007) (Lemelle, J.).

[10] In <u>Keele</u>, an unpublished opinion, the Fifth Circuit noted
that the language in <u>Vega</u>, which suggests that a claimant may
supplement the administrative record after the administrator has
denied the claim, conflicts with prior case law. <u>See</u> <u>Keele</u>, 221
Fed.Appx. 316, 319-20 ("if Vega allows into the record evidence
submitted after the administrator has reached a final decision,
this holding implicitly alters what had been a settled point in
our jurisprudence"). The Fifth Circuit then acknowledges that a
broad interpretation of <u>Vega</u> poses a number of practical
problems, which were elucidated by a district judge in another
Section of this Court:

> Does an administrator ipso facto abuse its discretion
> by refusing to reconsider its decision after the
> administrative appeal process is concluded? At what
> point, if any, may an administrator close its file and
> simply refuse to consider new evidence? If an
> administrator legitimately may take this position eight
> months after denying a claimant's appeal, is it not
> inconsistent with the abuse of discretion standard of

puzzle.[11]

_____

      review for this Court to then judge the reasonableness
      of the denial in light of the evidence submitted post
      hoc?

Id. (citing <u>Needham</u>, 2004 WL 193131, at *7 (E.D. La. Jan. 30,
2004) (Engelhardt, J.) (determining, even without the contested
materials, that the defendant abused its discretion in
terminating benefits).


    [11] In <u>Keele</u>, the Fifth Circuit acknowledged that one could
read <u>Vega</u>'s language one of two ways: (1) that the language
regarding the time frame in which a claimant can submit new
evidence to the administrator is limited by the language "in a
manner that gives the administrator a fair opportunity to
consider it"; or (2) that the time frame refers to " the length
of time between the claimant's submission of the new evidence and
subsequent filing of suit in federal court." <u>Keele</u>, 221
Fed.Appx. at 321; <u>see</u> <u>also</u> <u>Carrington</u>, Civ. A. No. 05-3261, 2007
WL 2177688, at *3 (physical evaluation form submitted to
defendant prior to filing lawsuit is part of the administrative
record as a matter of law). "Such an interpretation", observed
the Fifth Circuit, "is consistent with the overriding concern of
<u>Vega</u>, which was to 'encourage the parties to resolve their
dispute at the administrator's level.'" <u>Keele</u>, 221 Fed.Appx. at
321 (citation omitted). Ultimately, however, the Fifth Circuit
determined that it was unnecessary to resolve the issue of <u>Vega</u>'s
precise requirements because the documents in dispute did not
change the disposition of the case. <u>Id.</u>
    At least one Fifth Circuit case suggests that <u>Vega</u>'s
language regarding the time frame in which a claimant may submit
new evidence is limited by the language "the length of time
between the claimant's submission of new evidence and subsequent
filing of suit in federal court." <u>See</u> <u>Corry v. Liberty Life
Assurance Co. of Boston</u>, 499 F.3d 389, 400 n.12 (5th Cir. 2007)
(determining that certain affidavits submitted by the plaintiff
to the administrator several months after a "final" appeal but
more than a year before she filed suit were properly considered
part of the administrative record because the plaintiff
"submitted them over a year before she filed this
lawsuit,...thereby giving Liberty 'fair opportunity' to consider
them"). Another case suggests no such limitation. <u>See</u> <u>Estate of
Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, 215 F.3d
516, 522 n.5 (5th Cir. 2000) (citing <u>Vega</u> and noting "[i]f the
claimant submits additional information to the administrator, and

18

The parties agree that the Court is limited in its review to the administrative record.[12] They dispute, however, whether the administrative record includes evidence submitted by Mr. Anderson before filing suit but after Cytec denied his pro se administrative appeal.[13] Cytec did not consider the evidence submitted by Anderson's counsel after the plan administrator denied the second appeal. Cytec insists that, even though the bar is not particularly high to one seeking to add new evidence into the administrative record, the documents (Bates-stamped 103-348 and 462-465) should be excluded from the administrative record on the ground that the appeal was conclusive in July 2006, efforts to add to the record were not made until six months after the appeal had

_____

requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record"). The overriding quandary of <u>Vega</u>, however, is the inappropriate consequence that plan administrators must keep administrative records open indefinitely. This seems to be an over-arching policy concern that threads its way throughout all the decisions that seek to define the limits of the administrative record. A policy question that might not have been addressed as yet.

    [12] Neither side disputes that the administrative record, however inclusive, is mixed on the question of Anderson's disabled status as opposed to whether he voluntarily chose not to return to work because of personal reasons, including having lost everything during Hurricane Katrina and the fact that he needed accessible living arrangements to care for his wife, who is confined to a wheelchair.

    [13] Anderson sent two doctors' notes, each dated January 18, 2007 to Broadspire around January 31, 2007; these notes are Bates-stamped AR 104-106 and 462-465. Anderson also sent new VA records from July 2006 to December 2006 to Broadspire in late May 2007; these records are Bates-stamped AR 114-345.

been decided against Mr. Anderson, and more than a year after his benefits were discontinued. These circumstances arguably would satisfy one interpretation of the <u>Vega</u> dictum, but it is important to be faithful to the notion that this Court ought not sanction keeping the administrative record open indefinitely.

The Court finds that under the circumstances presented, and the facts recited,[14] the plan administrator did not commit an abuse

---

[14] In support of its decision to discontinue benefits, Cytec relied on evidence (his major depression screen dated 10/12/05 was negative) suggesting that Mr. Anderson's condition had improved. Dr. Saldivida's observations on 11/15/05, a registered nurse's progress note dated 11/30/05, and PTSD group therapy progress notes dated September 2005 to January 2006 fairly and reasonably indicate improvement and stability in Anderson's condition:

- "patient is alert, affect appropriate, mood less overwhelmed";
- "associations organized";
- "denies any suicidal or homicidal ideation";
- "no overt hallucinations";
- "patient states that things are fairly stable at this time";
- "patient has now ben placed on short term disability. He has received a check from his job and now has financial means to take care of his bills."
- "Mood is better today."
- "Memory is improved, insight and judgment intact. Patient denies substance abuse."
- "Mr. Anderson was assessed to have fair insight and judgment."
- "The patient's thought processes were essentially intact."
- "The patient was fully oriented, and his reason/remote memory was grossly intact."
- "His speech was coherent."
- "The patient was cooperative; he maintained fair eye contact."
- "The patient expressed an understanding of the materials taught to him today, and there were no

of discretion in denying the disability benefits; that decision was
supported by substantial evidence in the administrative record
before the appeal was denied.  Accordingly, the plaintiff's claims
are hereby dismissed.[15]


New Orleans, Louisiana, March 27, 2009.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

    barriers to his learning."
-    "He was verbal and spontaneous."

[15] The present rather challenging state of the case
literature in this Circuit will frequently lead to what some
would say are harsh results.  It might well be said that the
Fifth Circuit will want to revisit the issue of what are the
outer limits of defining the administrative record in ERISA
disability disputes.  No doubt the dicta in Vega and Keele is
well-motivated, but one must be alert to the unintended and,
possibly, open-ended permissiveness and uncertainty in defining
the responsibilities of plan administrators when late efforts are
made to add to the administrative record.
    If Vega's model is elusive and blurs a bright line test, can
a test be fashioned that respects the policy of not leaving
administrative records open indefinitely?  It might be that two
questions would inform a reasonable and workable test:

(1)  Did the claimant have a fair opportunity during the appeal
    process and before the adverse decision to present evidence
    that supports the disability claim and answer the plan
    administrator's questions?, and
(2)  Can the claimant show good cause for the failure to submit
    the material during the original appeal process?

(If good cause is the accepted test for the tolerance of newly
discovered evidence in something like a Rule 59 setting,
arguably, the same test should apply to requests to add to the
administrative record.)